RECEIVED
IN LAKE CHARLES, LA

FEB - 8 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES, LOUISIANA**

| | | |
|---|---|---|
| **MARCUS GORDON, ET AL** | * | **PETITION FOR INTERVENTION** 65-10902 |
| | * | |
| | * | |
| **VERSUS** | * | **CIVIL ACTION NO.: 10902** |
| | * | |
| **JEFFERSON DAVIS PARISH SCHOOL BOARD, ET AL** | * | |
| | * | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PETITION FOR INTERVENTION

**NOW INTO COURT,** comes Intervenor, Jefferson Davis Concerned Citizens, represented herein by **CLARENCE LEVY**, through undersigned counsel who respectfully submits the following memorandum in support of his Petition for intervention as follows:

### *FACTS*

On April 19, 1969, this Honorable Court issued a desegregation plan for Jefferson Davis Parish. The plan ordered the defendants, "to the extent consistent with the proper operation of the school system as a whole, shall locate any new school and substantially expand any existing schools with the objective of eradicating the vestiges of the dual system."

Jefferson Davis Parish School Board made a decision to close Ward Elementary and relocate the students from that school to what was formerly the Northside Junior High School; relocated students formerly at Northside Junior High School, grades seventh to twelfth, to the old Jennings High School campus and then built a new school to house the Jennings high school students, all in violation of the letter and the spirit of

the desegregation plan and court order dated April 19, 1969. Ward Elementary is currently closed pending the completion of repairs to the old Northside Junior High School.

On December 1, 2004, counsel for Intervenors, requested a conference with the Court to discuss their objections to the school board's decision to close Ward Elementary, and on February 3, 2005, the Court advised that this case was closed on July 3, 1969, and this Court had no jurisdiction over the matters. Intervenors now seek this court to review the merits of their objections.

## ***LAW AND ARUGMENT***

"Federal district courts are required to retain jurisdiction over the administration of the desegregation plans by the school boards." *Raney v. Board of Education of Gould School District,* 391 U.S. 443, 88 S. Ct. 1697, 20 L.Ed.2d 727. *Valley v. Rapides Parish School Board,* 5 Cir.1970, 434 F.2d 144. "This Court shall retain jurisdiction of this proceeding in order to assure that the provisions of this judgment and any other matters pertaining and incidental to the preservation of a unitary public school system in Rapides Parish, Louisiana, shall be sufficiently and effectively carried out."

The court in *Hines v. Rapides Parish School Board,* 479 F. 2d 762 (5th Cir. 1973) discusses the remedy for petitioners who question deficiencies in the implementation of desegregation orders and stated "We feel that the proper course for parental groups seeking to question current deficiencies in the implementation of desegregation orders is for the group to petition the district court to allow it to intervene in the prior action. The petition for intervention would bring to the attention of the district

court the precise issues, which the new group sought to represent and the ways in which the goal of a unitary system had allegedly been frustrated. The district court could then determine whether these matters had been previously raised and resolved and/or whether the issues sought to be presented by the new group was currently known to the court and parties in the initial suit. If the court determined that the issues these new group were currently known to the court and parties in the initial suit. If the court determined that the issues these new plaintiffs sought to present had been previously determined or if it found that the parties in the original action were aware of these issues and completely competent to represent the interests of the new group, it could deny intervention. If the court felt that the new group had a significant claim which it could best represent, intervention would be allowed." "In most school integration cases such intervention would most likely consist of the opportunity to present the claims to the court and to any group, such as the biracial committee in this case, working under the court's supervision to achieve a unitary system and to have the allegations considered on the merits. Where a committee is involved, the court might feel it desirable to allow the new group representation on that body. This procedure would seem adequate to ensure that different points of view would be presented in the difficult and often emotional struggle to achieve the constitutionally mandated but highly elusive unitary school system."

Jefferson Davis School Board's action are not consistent with the proper operation of the school system as a whole, and is outside the objective of eradicating the vestiges of the dual system. A biracial committee working under this Court's supervision is necessary to achieve a unitary system, as defendants were ordered to eliminate the dual

system *thirty seven years* ago and still to date, they are not complying with this Court's ruling.

The black communities in Jefferson Davis Parish no longer have a school, which has a negative impact on the people of the black communities. The school board has been very bias in selecting its personnel, bypassing African Americans. The system has never had a black superintendent; a black high school principal; a black director of finance; a black director of curriculum and instruction; a black auxiliary service director; a black special services director; a black federal program director; a black special services coordinator; or a black pupil appraisal. Jefferson Davis Parish has only one black Assistant Principal out of fourteen, and has had schools with no black teachers teaching regular education courses. The ratio of white to black employees is favored to the whites. An example is where a black person does fill a position, such as a school librarian, is 12:1, twelve white librarians to one black librarian. Due to the low black-white teacher ratio, the black students are witnessing severe adverse affects in terms of failure rate, suspension/expulsion rate and drop out rate.

The Superintendent has the authority to select the candidate for a position after the interview process. In most instances the selected candidate was not the top-scoring candidate in the process.

Intervenors are requesting intervention from this Honorable Court to achieve the implementation of the desegregation plan ordered on April 19, 1969 to have a unitary school system and to end the archaic practices of a dual system that Jefferson Davis Parish is exercising. Defendants have been interfering with the operation of the desegregation plan incorporated by Federal Court decree.

RESPECTFULLY SUBMITTED:

MACK I. FRANK, BAR NO. 9954
633 NORTH UNION STREET
OPELOUSAS, LA. 70570
(337) 948-9701